## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| T.F., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 1:06CV00954 |
| ) | (RJL) |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rules 7 and 56.1 of

the Local Rules of Civil Procedure, and the Court's Scheduling Order of July 27, 2006, plaintiffs

hereby submit this Motion for Summary Judgment.

This is an appeal from a Hearing Officer's Decision dated February 22, 2006,

issued pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §

1415. Plaintiffs ask the Court to reverse the Hearing Officer's Decision dated February 22,

2006, and award appropriate relief as set forth in Appendix A of the accompanying

Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment

and the Proposed Order filed herewith. In addition to the Memorandum referenced above,

plaintiffs respectfully refer the Court to the accompanying Statement of Undisputed Material

Facts and the Administrative Record filed by defendants on October 5, 2006.

Dated:  October 26, 2006                    Respectfully submitted,


                                             /s/ Edward M. Mathias
                                            Carolyn F. Corwin (D.C. Bar No. 939355)
                                            Edward M. Mathias (D.C. Bar No. 479264)
                                            COVINGTON & BURLING LLP
                                            1201 Pennsylvania Avenue, N.W.
                                            Washington, DC 20004-2401
                                            Telephone: (202) 662-6000
                                            Fax: (202) 662-6291

                                            Robert I. Berlow (D.C. Bar No. 928069)
                                            805 Fairfield Estates Court
                                            Crownsville, MD 21032
                                            Telephone: (301) 912-2281
                                            Fax: (301) 912-2282

                                            *Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| T.F., et al., ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Civil Action No. 1:06CV00954 |
| ) | (RJL) |
| v. ) | |
| ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| *Defendants*. ) | |
| _____) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs, pursuant to Rule 7.1(h) of the Local Rules of Civil Procedure,

contend that there is no genuine issue as to the following material facts:

## I.    The Plaintiffs

1.    Plaintiff T.F. is a ten year-old resident of the District of Columbia.

(Hearing Officer Decision of February 22, 2006 (the "Second HOD"), A.R. 4.)[1]

2.    T.F. is currently enrolled at Accotink Academy.  (Second HOD, A.R. 4.)

3.    Plaintiff Angelique Moore is T.F.'s mother and custodian.  Defs.'

Answer ¶¶ 13-14.

_____

[1]    "A.R." refers to the Administrative Record that defendants filed on October 5, 2006. "A.R. 4" as used in the citation above refers to page 4 of the Administrative Record (as indicated in the bottom right corner of each page).  For the convenience of the Court, plaintiffs will cite to the page numbers of the Administrative Record throughout this Statement.

## II.     T.F.'s Educational Background and Test Scores

4.     T.F. was first tested for a learning disability in October 2002, when she was seven years old and in first grade.  (Declaration of Dr. Sheila C. Iseman (Iseman Decl.), A.R. 215 at ¶ 8.)

5.     Although she had previously repeated kindergarten, her test results showed that T.F. was then functioning at a kindergarten level.  (Declaration of Dr. Meredith P. Branson (Branson Decl.), A.R. 209 at ¶ 21; Iseman Decl., A.R. 216 at ¶ 11; Individualized Education Program (IEP) (1/27/03), A.R. 100.)

6.     Based on the results of the October 2002 tests, T.F. was classified as learning disabled.  (IEP (1/27/03), A.R. 100.)

7.     In January 2003, defendants developed T.F.'s first IEP.  (*See* IEP (1/27/03), A.R. 100.)

8.     Between January 2003 and May 2005, defendants developed a total of four IEPs for T.F.  (*See* IEP (1/27/03), A.R. 100; IEP (1/16/04), A.R. 123; IEP Addendum (3/24/04), A.R. 133; IEP (6/14/04), A.R. 139.)

9.     Each successive IEP largely restated the same academic goals that T.F. had been unable to achieve in the time period since the previous IEP was developed.  (Letter from Dr. Branson to Hearing Officer Jones (5/12/05), A.R. 30 at 2; Branson Decl., A.R. 210 at ¶ 27; Iseman Decl., A.R. 219 at ¶ 21.)

10.     Defendants reduced the services provided to T.F. in some IEPs subsequent to the IEP developed in January 2003.  (Hearing Officer Decision of May 24, 2005, A.R. 17 (the "First HOD").)

2

11.    Testing done in April 2005 showed that T.F. was still functioning at essentially the same level at which she tested in October 2002.  (Branson Decl., A.R. 209, 211, at ¶¶ 21, 31; Iseman Decl., A.R. 216 at ¶ 11.)

12.    In word reading, T.F. tested at K:1 in October 2002 and at K:8 in April 2005.[2]  (Branson Decl., A.R. 209 at ¶ 21.)

13.    In reading comprehension, T.F. tested at 1:0 in October 2002 and at 1:1 in April 2005.  (Branson Decl., A.R. 209 at ¶ 21.)

14.    In math reasoning, T.F. tested at K:4 in October 2002 and at K:3 in April 2005.  (Branson Decl., A.R. 211 at ¶ 31.)

III.    **The Procedural History of T.F.'s IDEA Claim**

15.    On March 1, 2005, T.F. and her mother filed an administrative complaint under the IDEA.  (Pls.' Hr'g Request (3/1/05), A.R. 75-78.)

16.    A due process hearing was held before a Hearing Officer on May 11, 2005.  (First HOD, A.R. 12.)

17.    The Hearing Officer determined that defendants had failed to create an appropriate IEP, had failed to provide an appropriate educational placement, and had failed to implement fully the IEPs they had developed for T.F.  (First HOD, A.R. 17-18.)

18.    The Hearing Officer determined that T.F. did not receive "the requisite amounts of specialized instructions [sic] and speech and language therapy."  (First HOD, A.R. 14.)

_____

[2]    In these scores, the first number represents the grade-level and the second number represents the increment of progress within that grade.  Thus, K:1 represents the first level of progress within the kindergarten grade level.

19.     The Hearing Officer determined that T.F. received only 35% of speech and language services specified in her IEP because her speech pathologist missed sessions. (First HOD, A.R. 17.)

20.     The Hearing Officer determined that defendants reduced T.F.'s specialized instruction services from 20 hours to 12 hours.  (First HOD, A.R. 17.)

21.     The Hearing Officer determined that T.F. did not achieve any academic benefit from her placement at Stanton Elementary School for the 2004-05 school year.  (First HOD, A.R. 18.)

22.     The Hearing Officer concluded that defendants had denied T.F. a free appropriate public education ("FAPE").  (First HOD, A.R. 18.)

**IV.     The Evidence Before the Hearing Officer on Compensatory Education**

23.     At the Hearing Officer's suggestion, the parties agreed to submit briefs and affidavits in lieu of an evidentiary hearing on the compensatory education award. (Letters from Robert Berlow to Hearing Officer Jones of Oct. 27, 2005 and Nov. 18, 2005, Mathias Decl. Ex. A; Second HOD, A.R. 3.)

24.     T.F. and her mother submitted a brief and declarations from two witnesses, Drs. Meredith Branson and Sheila Iseman.  (Second HOD, A.R. 3.)

25.     Drs. Branson and Iseman testified as expert witnesses in the May 11, 2005 due process hearing.  (First HOD, A.R. 15, 25.)

26.     The qualifications of Drs. Branson and Iseman are set forth in their respective declarations.  (Branson Decl., A.R. 206 at ¶¶ 1-7; Iseman Decl., A.R. 214 at ¶¶ 1-2.)

4

27.    Had an appropriate IEP for T.F. been developed and fully implemented, it is likely that:

    a.    T.F. would have demonstrated sight/word recognition and word decoding skills at approximately an ending first grade or beginning second grade level by April 2005;

    b.    T.F. would have made significant gains in her ability to attend to and comprehend multiple-step directions;

    c.    T.F.'s attention span and memory skills would have been stronger as a result of frequent and appropriate repetition of newly learned material presented in a systematic manner;

    d.    T.F.'s ability to interact successfully with peers would have improved as a result of social skills training and placement with peers of comparable intellectual functioning.

(Branson Decl., A.R. 210 at ¶ 26.)

28.    T.F. did not develop the skills or achieve the goals referenced in the preceding paragraph because her IEPs were not based on an individualized assessment of her phonetic strengths and weaknesses.  (Branson Decl., A.R. 210 at ¶ 27.)

29.    The January 27, 2003 IEP did not meet T.F.'s needs.  (Iseman Decl., A.R. 218 at ¶ 20.)

30.    The January 2004 IEP did not meet T.F.'s needs.  (Iseman Decl., A.R. 219 at ¶ 21.)

31.    T.F. did not benefit from her part-time special education program during the 2002-03 and 2003-04 school years.  (Iseman Decl., A.R. 220 at ¶ 24.)

32.    Had T.F. been properly diagnosed and proper programs provided for her, it is likely that she would have scored at an emerging second grade level on math reasoning as of April 2005.  (Branson Decl., A.R. 211 at ¶ 32.)

5

33.     T.F. did not realize any educational benefit from October 2002 to April 2005, as evidenced by her test scores and by the fact that her goals and objectives as stated in her IEP were repeated year to year.  (Branson Decl., A.R. 210 at ¶ 27.)

34.     T.F.'s failure to gain educational benefit from her academic placement continued until July 14, 2005, when she began attending Accotink Academy.  (Branson Decl., A.R. 210 at ¶ 27; Pls.' Mem. in Support of Parent's Request for Comp. Ed. for T.F., A.R. 194.)

35.     If T.F. had had the benefit of an appropriate and fully implemented IEP, she would have tested higher than she did in April 2005.  (Branson Decl., A.R. 212 at ¶ 36.)

36.     Had T.F. been properly identified by defendants, placed in an appropriate self-contained special education classroom with appropriate goals and objectives, and received the therapeutic services that she required, it is likely that as of December 2005, T.F. would be functioning at a mid-second grade level in terms of her academic and social emotional functioning.  (Branson Decl., A.R. 212 at ¶ 36.)

37.     Because of her learning disability, T.F. can be expected to make six months of progress for every twelve months of classroom learning if provided with an appropriate full time special education program including extended year school services.  (Branson Decl., A.R. 210 at ¶ 28; Iseman Decl., A.R. 219-20 at ¶ 22.)

38.     T.F. now will take longer to learn skills that she could have learned more quickly at a younger age if she had been provided with appropriate instruction.  (Branson Decl., A.R. 212 at ¶ 37; Iseman Decl., A.R. 220 at ¶ 23.)

6

39.    T.F. requires very intensive interventions -- "massive" amounts of additional educational services beyond those she is receiving at Accotink Academy -- to close the educational gap created by the past denial of FAPE.  (Branson Decl., A.R. 212 at ¶¶ 40-42; Iseman Decl., A.R. 220 at ¶ 24.)

40.    T.F. needs at least 1,800 hours of additional instruction to eliminate her educational deficit.  (Iseman Decl., A.R. 220 at ¶ 24.)

41.    To close the educational deficits caused by the denial of FAPE, T.F. needs educational services including academic tutoring, speech language therapy, behavioral counseling, and, if necessary, job training and other transitional services.  (Branson Decl., A.R. 211-13 at ¶¶ 31, 34-35, 42-43; Iseman Decl., A.R. 220 at ¶¶ 24-25.)

42.    T.F. requires individualized services because of her attention problems and language disability.  Individualized services also are necessary because they allow the service provider to focus intensively on areas of immediate need as they are identified by T.F.'s school-based teachers and therapists.  (Branson Decl., A.R. 212 at ¶ 42.)

43.    To close the educational deficits caused by the denial of FAPE, T.F. needs as much tutoring and other services as she can manage after school, on weekends, and during school vacations throughout the calendar year.  (Branson Decl., A.R. 212-13 at ¶ 42; Iseman Decl., A.R. 220 at ¶ 24.)

44.    To close the educational deficits caused by the denial of FAPE, the tutoring and other services must be provided until T.F. is able to demonstrate through formal testing (using the Wechsler Individual Achievement Test so that appropriate comparisons can be made) that the gap created by the lack of appropriate services provided to her by defendants is no longer evident in standardized testing.  (Branson Decl., A.R. 213 at ¶ 43.)

45.     Before the Hearing Officer, plaintiffs requested a remedy that called for T.F. to receive tutoring and other educational services as specified by Drs. Branson and Iseman.  (Pls.' Mem. In Support of Req. for Comp. Ed. for T.F., A.R. 201-04 ("Pls.' Comp. Ed. Mem.").)

46.     Defendants were given an opportunity to respond to the brief and evidence on compensatory education that plaintiffs submitted to the Hearing Officer, but failed to submit anything.  (Second HOD, A.R. 3.)

**V.      The Hearing Officer's February 22, 2006 Decision**

47.     The Hearing Officer found that "T.F.'s verbal abilities are significantly less developed than non-verbal skills, [and] as a result specific [and intense] levels of speech and language services are warranted including a specific treatment program to target her failures to make gains in reading skills."  (Second HOD, A.R. 5.)

48.     The Hearing Officer concluded that "it is clear that T.F. must have a compensatory education plan calculated to provide appropriate relief."  (Second HOD, A.R. 6.)

49.     The Hearing Officer concluded that the intensive and specialized services plaintiffs had sought were "necessary."  (Second HOD, A.R. 6.)

Dated:  October 26, 2006                              Respectfully submitted,


 /s/ Edward M. Mathias_____
 Carolyn F. Corwin (D.C. Bar No. 939355)
 Edward M. Mathias (D.C. Bar No. 479264)
 COVINGTON & BURLING LLP
 1201 Pennsylvania Avenue, N.W.
 Washington, DC 20004-2401
 Telephone: (202) 662-6000
 Fax: (202) 662-6291

 Robert I. Berlow (D.C. Bar No. 928069)
 805 Fairfield Estates Court
 Crownsville, MD 21032
 Telephone: (301) 912-2281
 Fax: (301) 912-2282

 *Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

T.F., et al.,                                                    )
                                                                 )
                                                                 )
                              Plaintiffs,                        )
                                                                 )     Civil Action No. 1:06CV00954
                                                                 )     (RJL)
                              v.                                 )
                                                                 )
DISTRICT OF COLUMBIA, et al.,                                    )
                                                                 )
                              Defendants.                        )
                                                                 )
_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN
## SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Carolyn F. Corwin (D.C. Bar No. 939355)
Edward M. Mathias (D.C. Bar No. 479264)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
Telephone: (202) 662-6000
Fax: (202) 662-6291

Robert I. Berlow (D.C. Bar No. 928069)
805 Fairfield Estates Court
Crownsville, MD 21032
Telephone: (301) 912-2281
Fax: (301) 912-2282

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**.......................................................................................................... **1**

**FACTUAL BACKGROUND** ......................................................................................... **1**

**ARGUMENT** ................................................................................................................. **7**

**I.    SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE.** .................................. **8**

**II.   THIS COURT SHOULD APPLY A NONDEFERENTIAL STANDARD OF
       REVIEW.** ........................................................................................................... **8**

**III.  THE HEARING OFFICER'S DECISION REGARDING RELIEF IS
       INCONSISTENT WITH D.C. CIRCUIT PRECEDENT AND OTHERWISE
       FAILED TO PROVIDE "APPROPRIATE" RELIEF.** ................................................. **9**

      **A.    The Hearing Officer Erred in Granting Defendants Control of the Development
       and Implementation of T.F.'s Compensatory Education Plan.** .......................... **10**

      **B.    The Hearing Officer's Remedy Was Inappropriate Under the IDEA and Was
       Arbitrary and Capricious in Light of the Undisputed Evidence in the Record.** **11**

**IV.   THIS COURT SHOULD ORDER A REMEDY THAT REQUIRES DEFENDANTS
       TO PROVIDE THE SERVICES T.F. NEEDS AND THAT IS TIED TO TESTING
       BENCHMARKS.** ................................................................................................ **12**

## INTRODUCTION

This is an appeal from a Hearing Officer's Decision dated February 22, 2006, issued pursuant to the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1415. The Hearing Officer failed to follow the statutory requirements and controlling D.C. Circuit precedent governing compensatory education remedies. Moreover, the Hearing Officer's Decision was arbitrary and inappropriate in light of the undisputed evidence in the record.

T.F., a child with a learning disability, and her mother, Angelique Moore (collectively, "plaintiffs"), now move for summary judgment. They ask this Court to reverse the Hearing Officer's Decision governing relief and to do what the evidence requires and what the Hearing Officer should have done -- order defendants to compensate T.F. with services that uncontested evidence in the record shows is reasonably calculated to repair the harm T.F. has suffered because defendants failed to provide her with the free appropriate public education to which she is entitled under the IDEA.

As described below, the Court should award T.F. the types of intensive, specialized tutoring and related services she needs, based on the undisputed expert testimony submitted below. Consistent with the standard stated in *Reid v. District of Columbia,* 401 F.3d 516, 524 (D.C. Cir. 2005), these services should be provided until annual testing reveals that T.F. is achieving at the level she would have but for defendants' violation of the IDEA.

## FACTUAL BACKGROUND

1.    T.F. was first tested for a learning disability in October 2002, when she was seven years old and in first grade.[1] (Declaration of Dr. Sheila C. Iseman (Iseman Decl.),

---

[1]    T.F. is now 10 years old. (Hearing Officer Determination of February 22, 2006 (the "Second HOD"), A.R. 4.) "A.R." refers to the Administrative Record that defendants filed on (continued…)

A.R. 215 at ¶ 8.)  Although she had previously repeated kindergarten, these test results showed that T.F. was then functioning at a kindergarten level.  (Declaration of Dr. Meredith P. Branson (Branson Decl.), A.R. 209 at ¶ 21; Iseman Decl., A.R. 216 at ¶ 11; Individualized Education Program (IEP) (1/27/03), A.R. 100.)  Based on the results of the October 2002 tests, T.F. was classified as learning disabled.  (*Id.*)  Because of her learning disability, defendants were obligated under the IDEA to provide her with an individualized education program (an "IEP") and a free appropriate public education ("FAPE").  20 U.S.C. § 1412(a).  In January 2003, defendants created the first of four IEPs for T.F.  Each successive IEP largely restated the same academic goals that T.F. had been unable to achieve in the time period since the previous IEP was developed.  (Branson Report (5/12/05), A.R. 30 at 2 ("The majority of IEP goals have been identical from year to year, regardless of the fact that [T.F.] has not mastered them."); Iseman Decl., A.R. 219 at ¶ 21.)  Notwithstanding T.F.'s repeated failure to meet the stated goals, the IEPs failed to provide for more intensive special education services.

Indeed, as the Hearing Officer found, defendants reduced the services provided to T.F. in some subsequent IEPs.  (Hearing Officer Decision of May 24, 2005, A.R. 17 (the "First HOD") (noting that defendants reduced T.F.'s specialized instruction services).)  The end result of defendants' neglect was that, as set forth in Table 1 below, testing done in April 2005 showed that T.F. was still functioning at essentially the same level at which she tested in October 2002:

---

October 5, 2006.  "A.R. 4" as used in the citation above refers to page 4 of the Administrative Record (as indicated in the bottom right corner of each page).  For the convenience of the Court, plaintiffs will cite to the page numbers of the Administrative Record throughout this Statement.

**Table 1**

|  | Word Reading | Reading Comprehension | Math Reasoning |
|---|---|---|---|
| October 2002 Test Scores | K:1[2] | 1:0 | K:4 |
| April 2005 Test Scores | K:8 | 1:1 | K:3 |

(Branson Decl., A.R. 209, 211, at ¶¶ 21, 31.)

2.      On March 1, 2005, T.F. and her mother filed an administrative complaint under the IDEA.[3]  (Pls.' Hr'g Request (3/1/05), A.R. 75-78.)  A due process hearing was held before a Hearing Officer on May 11, 2005.  (First HOD, A.R. 12.)  At that hearing, the Hearing Officer determined that defendants had failed to create an appropriate IEP, had failed to provide an appropriate educational placement, and had failed to implement fully the IEPs they had developed for T.F.  (First HOD, A.R. 17-18.)  He also found that:

- T.F. did not receive "the requisite amounts of specialized instructions [sic] and speech and language therapy" (First HOD, First HOD, A.R. 14);

- T.F. received only 35% of speech and language services specified in her IEP because her speech pathologist missed sessions (First HOD, A.R. 17);

- Notwithstanding the missed speech sessions, defendants reduced T.F.'s specialized instruction services from 20 hours to 12 hours (First HOD, A.R. 17); and

- T.F. did not achieve any academic benefit from her placement at Stanton Elementary School (First HOD, A.R. 18).

---

[2]      In these scores, the first number represents the grade-level and the second number represents the increment of progress within that grade.  Thus, K:1 represents the first level of progress within the kindergarten grade level.

[3]      As the Hearing Officer noted, there is a two-year statute of limitations applicable to claims brought under the IDEA.  (Second HOD, A.R. 6.)  *See also* 20 U.S.C. § 1415(b)(6)(B).  Because T.F. filed her administrative complaint on March 1, 2005, she is claiming compensatory education only for the denial of FAPE that occurred after March 1, 2003.

Based on these findings, the Hearing Officer concluded that defendants had denied T.F. a free appropriate public education. (First HOD, A.R. 18.) He ordered defendants to pay T.F.'s tuition at Accotink Academy for the 2005-06 school year. (*Id.*) In addition, he ordered the District of Columbia Public Schools (DCPS) to convene a meeting of T.F.'s IEP team to "discuss and determine compensatory education and if warranted develop an appropriate Compensatory Education Plan."[4] (*Id.*)

3.     On May 26, 2005, plaintiffs moved for reconsideration of the Hearing Officer's order on compensatory education on the ground that it conflicted with the D.C. Circuit's holding in *Reid* that "the hearing officer may not delegate his authority to a group that includes an individual specifically barred from performing the hearing officer's functions." (Letter of May 26, 2005, A.R. 24 (quoting *Reid*, 401 F.3d at 526).)[5] The Hearing Officer granted plaintiffs' motion on October 31, 2005. (Interim Order of 10/31/05, A.R. 10.) At the Hearing Officer's suggestion, the parties agreed to submit briefs and affidavits in lieu of an evidentiary hearing on the compensatory education award. (Letters from Robert Berlow to Hearing Officer Jones of Oct. 27, 2005 and Nov. 18, 2005, Mathias Decl. Ex. A; Second HOD,

---

[4]     Compensatory education awards under the IDEA consist of educational and related services that are intended "to provide the educational benefits that likely would have accrued from special educational services the school district should have supplied in the first place." *Reid v. District of Columbia,* 401 F.3d 516, 524 (D.C. Cir. 2005).

[5]     An IEP team generally includes the child's parents, select teachers, and a representative from the local education agency. *Reid*, 401 F.3d at 519 (citing 20 U.S.C. § 1414(d)).

A.R. 3.)  T.F. and her mother submitted a brief and declarations from two expert witnesses, Drs.

Meredith Branson and Sheila Iseman.[6]  (*Id.*)

   The Branson and Iseman declarations contained detailed information about T.F.'s

performance in various academic areas, including reading and math.  The declarations also

discussed T.F.'s academic needs and the gap, or "educational deficit," between her then-current

level of academic performance and the level she would have attained but for the denial of FAPE.

(*See generally* Branson Decl., A.R. 209-12 at ¶¶ 21-37; Iseman Decl., A.R. 216-19 at ¶¶ 11-21.)

In addition to the test scores in word reading, reading comprehension, and math reasoning noted

above, Dr. Branson also stated that but for the denial of FAPE, it is likely that:

> [T.F.] would have demonstrated sight/word recognition and word
> decoding skills at [] approximately an ending first grade or
> beginning 2nd grade level by April 2005 when [Dr. Branson] tested
> her;
>
> [T.F.] would have made significant gains in her ability to attend to
> and comprehend multiple-step directions;
>
> [T.F.'s] attention span and memory skills would have been
> stronger [as] a result of frequent and appropriate repetition of
> newly learned material presented in a systematic manner;
>
> [T.F.'s] ability to interact successfully with peers would have been
> improved as a result of social skills training and placement with
> peers of comparable intellectual functioning.

(Branson Decl., A.R. 210 at ¶ 26.)

   Drs. Branson and Iseman agreed that T.F. needed very substantial amounts of

tutoring and related services above and beyond her placement at Accotink Academy to close the

---

[6]  Drs. Branson and Iseman testified as expert witnesses in the May 11, 2005 due process
hearing.  (First HOD, A.R. 15, 25.)  Their qualifications are set forth in their respective
declarations.  (Branson Decl., A.R. 206 at ¶¶ 1-7; Iseman Decl., A.R. 214 at ¶¶ 1-2.)

educational deficit caused by the denial of FAPE. These services include academic tutoring, speech language therapy, behavioral counseling, and, if necessary, job training and other transitional services. (Branson Decl., A.R. 211-13 at ¶¶ 31, 34-35, 42-43; Iseman Decl., A.R. 220 at ¶¶ 24-25.) Dr. Iseman concluded that T.F. needed at least 1,800 hours of additional instruction to eliminate her educational deficit. (Iseman Decl., A.R. 220 at ¶ 24.) Dr. Branson stated that T.F. "will require very intensive interventions to bring her back up to adequate levels because of the large amount of practice and learning that she lost every day for more than two years." (Branson Decl., A.R. 212 at ¶ 40.) Both experts agreed that T.F., at her then-current stage of development, would take longer to learn the same skills that she could have learned at a younger age if she had been provided with appropriate instruction. (Branson Decl., A.R. 212 at ¶ 37; Iseman Decl., A.R. 220 at ¶ 23.)

In addition to the Branson and Iseman Declarations, plaintiffs submitted a brief that set forth a remedy consistent with the experts' opinions. (Pls.' Mem. In Support of Req. for Comp. Ed. for T.F., A.R. 201-04 ("Pls.' Comp. Ed. Mem.").) The remedy called for T.F. to receive tutoring and other educational services as specified by the experts. (*Id*.) Both experts agreed that T.F. needed as much tutoring as she could manage after school, on weekends, and during school vacations throughout the calendar year. (Branson Decl., A.R. 212-13 at ¶ 42; Iseman Decl., A.R. 220 at ¶ 24.) As soon as testing showed that T.F. had overcome the educational deficits attributable to the denial of FAPE, she would no longer be entitled to compensatory services. (Pls.' Comp. Ed. Mem., A.R. 203-04; Branson Decl., A.R. 213 at ¶ 43.)

In response to plaintiffs' brief and declarations, defendants submitted nothing. (Second HOD, A.R. 3.) They provided no declarations from experts and no documents to counter the opinions set forth by Drs. Branson and Iseman. Nor did they submit any evidence

from T.F.'s teachers or other school personnel.  In addition, defendants did not submit any

argument or propose any alternative remedy.  (*Id.*)

       The Hearing Officer found that "it is clear that T.F. must have a compensatory

education plan calculated to provide appropriate relief."  (Second HOD, A.R. 6.)  He

acknowledged that the intensive and specialized services plaintiffs had sought were "necessary."

(*Id.*)  Rather than granting relief based on the evidence and his findings of fact, however, the

Hearing Officer failed to provide <u>any</u> meaningful remedy.  Instead, he directed that:

> DCPS shall… conduct pre-test(s) to determine the present levels of performance for T.F. in all academic areas pertaining to the student's IEP.
>
> DCPS shall, within five (5) school days of the completion of pre-test(s) in conjunction with Accotink Academy officials, develop and implement a compensatory education plan to include five (5) hours of after school tutoring which focuses on the student's language based problems.
>
> DCPS shall, in conjunction with Accotink Academy, implement this compensatory education plan for a three- (3) months [sic] period of time and thereafter provide post-test(s) to determine the impact of the compensatory education program.  The results shall be sent to the Hearing Officer.[7]

(Second HOD, A.R. 7.)

## **ARGUMENT**

       Plaintiffs provided the Hearing Officer with all of the evidence he needed to

fashion an appropriate remedy.  Instead of fashioning appropriate relief based on the evidence

presented, however, the Hearing Officer inexplicably delegated to DCPS -- the very party

---

[7]    To date, plaintiffs are not aware of and the record does not reflect, any effort by defendants to comply with the Hearing Officer's order.  To plaintiffs' knowledge, defendants did not conduct any type of testing, provide any tutoring, or make any report as ordered by the Hearing Officer.

responsible for the denial of FAPE -- the authority to devise a remedy.  The Hearing Officer did so even though plaintiffs had already made him aware that such a delegation was impermissible under controlling D.C. Circuit case law.  (Letter of May 26, 2005, A.R. 24 (quoting *Reid*, 401 F.3d at 526).)  For the reasons set forth below, this Court should grant summary judgment in plaintiffs' favor and reverse the Hearing Officer's directives regarding the form of relief.  In addition, the Court should order a remedy consistent with the testimony of Drs. Branson and Iseman regarding necessary and appropriate relief, and with plaintiffs' other submissions below.

## I.     SUMMARY JUDGMENT IS APPROPRIATE IN THIS CASE.

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In IDEA cases, a motion for summary judgment may serve as a motion for judgment based on the record evidence.  *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005) ("When no additional evidence is introduced in a civil suit seeking review of an H.O.D., a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.").  In this case, there is no evidence in the record contradicting the testimony of Drs. Branson and Iseman; thus, the evidence regarding appropriate relief is undisputed.  Summary judgment is therefore appropriate here.

## II.    THIS COURT SHOULD APPLY A NONDEFERENTIAL STANDARD OF REVIEW.

The D.C. Circuit has rejected arguments that the district court's review in an IDEA case should be "deferential."  *Reid*, 401 F.3d at 521.  In *Reid,* the Court of Appeals noted that the "IDEA 'plainly suggest[s] less deference than is conventional' in administrative proceedings."  *Id.* (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989)).

Moreover, the Court stated that "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Id.* (quoting *Kerkam v. Superintendent, D.C. Pub. Schools*, 931 F.2d 84, 87 (D.C. Cir. 1991)).  Because the hearing officer in *Reid* set forth the compensatory education award "in a one-sentence ipse dixit," *Reid*, 401 F.3d at 521, the Court there held that the district court should have applied a "non-deferential standard," *id.* at 522.

The Hearing Officer's decision in this case was similarly devoid of reasoned and specific findings regarding the remedy.  After finding that compensatory education services were "necessary," the Hearing Officer stated that "the duration of those services is speculative in light of the inability to specifically determine the student's presently [sic] levels of performance." (Second HOD, A.R. 7.)  He cited no evidence or authority for this conclusion and did not explain why the expert testimony in the record regarding T.F.'s performance and needs was speculative. Instead, he simply disregarded the only testimony before him.  In these circumstances, this Court should apply the same non-deferential standard of review that the D.C. Circuit applied in *Reid*.

## III.    THE HEARING OFFICER'S DECISION REGARDING RELIEF IS INCONSISTENT WITH D.C. CIRCUIT PRECEDENT AND OTHERWISE FAILED TO PROVIDE "APPROPRIATE" RELIEF.

In reviewing a Hearing Officer's decision under the IDEA, a district court must "ensure that relief set forth in the administrative award [is] 'appropriate.'" *Reid*, 401 F.3d at 521; *see also* 20 U.S.C. § 1415(i)(2)(B).  Relief under the IDEA must be qualitative, fact-intensive, and individually tailored. *Branham v. Gov't of the District of Columbia,* 427 F.3d 7, 9 (D.C. Cir. 2005).  In this case, the relief the Hearing Officer's award was not appropriate.  It was inconsistent with the statute and with D.C. Circuit case law, as well as with the undisputed evidence in the record.

**A.      The Hearing Officer Erred in Granting Defendants Control of the Development and Implementation of T.F.'s Compensatory Education Plan.**

The Hearing Officer's order directing defendants to develop and implement a compensatory education plan for T.F. was plainly impermissible. The IDEA expressly provides that a due process hearing must be conducted by an impartial hearing officer. It "may not be conducted by an employee of the State educational agency or the local educational agency involved in the education or care of the child." 20 U.S.C. § 1415(f)(3). In *Reid*, the D.C. Circuit held that a hearing officer's decision allowing the student's IEP team discretion to discontinue a compensatory education award violated this statutory prohibition. 401 F.3d at 526. Even though the IEP team included the student's mother, the Court of Appeals nevertheless held that "the hearing officer may not delegate his authority to a group that includes an individual specifically barred from performing the hearing officer's functions." 401 F.3d at 526.

In this case, just as in *Reid*, the Hearing Officer delegated his authority to the defendants by directing them to develop T.F.'s compensatory education plan. (Second HOD, A.R. 7.) The Hearing Officer's Decision gave defendants authority to set limits on the scope and duration of the award. (*Id.*) Thus, defendants would exercise even more control here than in *Reid*, where they had authority only to terminate the compensatory education award. Accordingly, the Hearing Officer's Second Decision in this case violated plaintiffs' rights under the statute.[8] *Reid*, 401 F.3d at 526.

---

[8]      To the extent that the Hearing Officer delegated his authority to, and purported to impose obligations on, Accotink Academy in the Second HOD, that delegation also was inappropriate. Accotink Academy, the school T.F. now attends, was not a party to the proceedings below.

**B.    The Hearing Officer's Remedy Was Inappropriate Under the IDEA and Was Arbitrary and Capricious in Light of the Undisputed Evidence in the Record.**

The Hearing Officer ordered defendants to test T.F., to develop a compensatory education plan to include five hours of tutoring, to conduct follow-up tests after three months, and to report the results to the Hearing Officer. (Second HOD, A.R. 7.) This can hardly be considered an "award" at all. In any event, it plainly falls short of the qualitative, fact-intensive, and individually tailored relief required under the IDEA. *See Branham*, 427 F.3d at 9. The only actual compensatory education provided in the order was five hours of tutoring over the course of three months. Even if the Hearing Officer had intended to provide for, e.g., five hours of tutoring per week for three months, this would be inadequate -- the Hearing Officer himself stated that T.F. required "intensive" services. Moreover, the award was arbitrary and capricious. There is no evidence in the record to support an award of a mere five hours (or even five hours per week); rather, Dr. Iseman stated that 1,800 hours would be an appropriate award. (Iseman Decl., A.R. 220 at ¶ 24.)

The Hearing Officer's decision to order further testing also lacked support in the record. Dr. Branson and Dr. Iseman testified about T.F.'s performance and about her April 2005 test results. Neither stated that further testing was necessary. Dr. Iseman's opinion was based at least in part on her "recent" evaluation of T.F.'s progress at Accotink Academy. (Iseman Decl., A.R. 216-19 ¶¶ 13-18.) In addition, the experts agreed on the rate at which T.F. would learn in an appropriate setting (six months of academic progress for every twelve months that she spends in an appropriate educational setting). (Branson Decl., A.R. 211-12 at ¶¶ 30, 41; Iseman Decl., A.R. 219-20 at ¶ 22.) Accordingly, there was no need for the pre- and post-testing ordered by the Hearing Officer. The Hearing Officer had all the evidence he needed to develop a long term compensatory education award. His order prescribing relief should be reversed.

**IV.    THIS COURT SHOULD ORDER A REMEDY THAT REQUIRES DEFENDANTS TO PROVIDE THE SERVICES T.F. NEEDS AND THAT IS TIED TO TESTING BENCHMARKS.**

Plaintiffs seek the same remedy they sought before the Hearing Officer:  an award of educational services funded by defendants that will address the specific educational deficits identified by Drs. Branson and Iseman.  Ms. Moore would determine the specific mix of services T.F. would receive after consulting with T.F.'s IEP team.  Defendants would be required to pay for these services until testing shows that T.F. has closed the educational deficit attributable to the denial of FAPE (or until T.F. turned 19).[9]  (Pls.' Comp. Ed. Mem., A.R. 203-04.)

This remedy is consistent with D.C. Circuit precedent.  The Court of Appeals stated in *Reid* that a compensatory education award must be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place."  *Reid*, 401 F.3d at 526.  The award must be flexible and qualitative, rather than mechanical or quantitative, in order to meet the learning disabled student's unique needs.  *Id*. at 524.  In addition, the award must be based on evidence of the student's "specific educational deficits resulting from [the] loss of FAPE and the specific compensatory measures needed to best correct those deficits."  *Id*. at 526.

Here Drs. Branson and Iseman identified the "specific educational deficits resulting from [the] loss of FAPE."  *Id*.  Dr. Branson used T.F.'s test scores as benchmarks for T.F.'s abilities both prior to the denial of FAPE (the October 2002 scores) and close to the time when the denial of FAPE ended (the April 2005 scores).  (Branson Decl., A.R. 209, 211, at ¶¶ 21, 31.)  Dr. Branson examined T.F.'s scores in such critical areas as word reading, reading

---

[9]    The remedy plaintiffs request is set forth in detail in Appendix A to this brief and in the Proposed Order filed herewith.  This requested remedy was previously set out in plaintiffs' brief to the Hearing Officer, filed in December 2005.  (*See* Pls.' Comp. Ed. Mem., A.R. 203-04.)

comprehension, and math reasoning, and found that T.F. had not made any appreciable progress

during the period from October 2002 to April 2005.[10]  (Branson Decl., A.R. 209, 211 at ¶¶ 21,

31; *see also* Iseman Decl., A.R. 219-20 at ¶¶ 22-23.)

In order to determine the level at which T.F. should have been performing (and

thus the true extent of T.F.'s education deficits), Dr. Branson considered how much progress T.F.

ordinarily would make if she were in an appropriate educational setting.  Consistent with Dr.

Iseman's opinion, Dr. Branson found that, because of T.F.'s learning disability, she could be

expected to make only six months of progress for each year of school.  (Branson Decl., A.R.

211-12 at ¶¶ 30, 41; Iseman Decl., A.R. 219-20 at ¶ 22.)  From this information, Dr. Branson

projected that in April 2005 T.F. likely would have scored at an ending first-grade or beginning

second-grade level if she had not been denied FAPE.  (Branson Decl., A.R. 210-11 at ¶¶ 26, 28,

30.)

Thus, using the evidence in the record, the Court can calculate where T.F. should

have tested in April 2005 in word reading, reading comprehension, and math reasoning but for

the denial of FAPE:

**Table 2**

|  | Word Reading | Reading Comprehension | Math Reasoning |
|---|---|---|---|
| Oct. 2002 Test Scores | K:1 | 1:0 | K:4 |
| Expected April 2005 Test Scores But For the Denial of FAPE[11] | 1:3 | 2:2 | 1:6 |

---

[10]    Dr. Branson also identified a number of other educational deficits beyond those set forth above.  (*See, e.g.,* Branson Decl., A.R. 210 at ¶ 26.)

[11]    T.F. was denied FAPE from March 1, 2001 until July 13, 2005, a total of 28.5 months.  Because T.F. can be expected to make six months of progress for every twelve months of education in an appropriate academic setting, she should have made 14.25 months worth of (continued…)

(Branson Decl., A.R. 209, 211-12 at ¶¶ 21, 31, 41.)

Plaintiffs also identified "the specific compensatory measures needed to best correct th[e] deficits [caused by the denial of FAPE]." *Reid,* 401 F.3d at 526. Drs. Branson and Iseman testified that these measures include academic tutoring, speech language therapy, behavioral counseling, and, if necessary, job training and other transitional services. (Branson Decl., A.R. 211-13 at ¶¶ 31, 34-35, 42-43; Iseman Decl., A.R. 220 at ¶¶ 24-25.) Consistent with the need for flexible, qualitative relief, as required under *Reid*, plaintiffs' remedy provides for the flexibility necessary to account for T.F.'s changing needs as she develops at Accotink. (*See* Branson Decl., A.R. 212-13 at ¶ 42 (services should focus on areas of need identified by school-based teachers and therapists).) Prior to determining what services T.F. will receive, Ms. Moore must consult with T.F.'s IEP team, which necessarily will include her teachers at Accotink. In addition, Ms. Moore may seek the advice of additional consultants such as Dr. Branson and/or Dr. Iseman to determine how best to close the educational deficits going forward.

Finally, plaintiffs' remedy is reasonably calculated to give T.F. the educational benefits she would have received but for the denial of FAPE. *Reid*, 401 F.3d at 526. Drs. Branson and Iseman agreed that the best way to close the educational deficits was to provide T.F. with as much tutoring and other services as she can handle after school, on weekends, and during school holidays and vacations. (Branson Decl., A.R. 212-13 at ¶ 42; Iseman Decl., A.R. 220 at ¶ 24.) The remedy is subject to reasonable limits. The categories of services to be provided are spelled out in the proposed order. Ms. Moore will make decisions about how many hours of

---

progress, or approximately 1:2 levels of progress using the WIAT scale, from March 1, 2003 to July 13, 2005.

services are feasible and advisable, in view of T.F.'s schedule and other relevant circumstances.

Defendants' obligation to provide the services would terminate as soon as T.F. "is able to

demonstrate through formal testing (the Wechsler Individual Achievement Test so that

comparisons can be made) that the 'gap' created by the lack of appropriate services provided to

her by DCPS is no[] longer evident [in] standardized testing."  (Branson Decl., A.R. 213 at ¶ 43.)

Thus, plaintiffs' remedy is narrowly tailored to provide the relief necessary to close the

educational deficits identified by the experts.  The remedy will end as soon as the educational

deficits are eliminated (or on the date T.F. turns 19).[12]

    This remedy is a reasonable and practical means to close the educational deficits

caused by defendants' denial of FAPE to T.F.  The remedy offers the flexibility that the D.C.

Circuit standard demands; it is not a mechanical, hours-counting approach.  At the same time, the

remedy is tied to specific, objective testing benchmarks so that once the educational deficits are

eliminated, defendants' obligation to provide compensatory education services will end.

---

[12] The Hearing Officer was wrong in suggesting that plaintiffs sought a remedy that necessarily would continue until T.F. turned eighteen years of age.  (Second HOD, A.R. 6 at n.6.)  Plaintiffs noted in their brief to the Hearing Officer that the compensatory education services would be discontinued prior to T.F.'s eighteenth birthday if annual testing showed that she had eliminated the educational deficit attributable to the denial of FAPE.  (Pls.' Comp. Ed. Mem. at 8 ("If annual testing shows that the gap is closed sooner DCPS' compensatory education obligation would end."); *id*. at 10 (defendants to pay for services "until such time as [T.F.] is achieving at the level at which she would have been achieving but for the denial of FAPE").)

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court grant summary judgment in their favor, reverse the Hearing Officer's decision regarding form of relief, and enter an order providing for a compensatory education program as described herein and in plaintiffs' Proposed Order.

Dated:  October 26, 2006

Respectfully submitted,

 /s/ Edward M. Mathias
Carolyn F. Corwin (D.C. Bar No. 939355)
Edward M. Mathias (D.C. Bar No. 479264)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
Telephone: (202) 662-6000
Fax: (202) 662-6291

Robert I. Berlow (D.C. Bar No. 928069)
805 Fairfield Estates Court
Crownsville, MD 21032
Telephone: (301) 912-2281
Fax: (301) 912-2282

*Attorneys for Plaintiffs*

16

## APPENDIX A

As stated in the Proposed Order submitted with plaintiffs' motion for summary judgment, the remedy plaintiffs seek is as follows:

1. Defendants shall pay for T.F. to receive individualized academic tutoring, speech language therapy, education-related evaluation and consultation, and behavioral counseling after school, on weekends, on school holidays, and during summer vacation for as many hours as T.F.'s mother, plaintiff Angelique Moore, determines is feasible and advisable in light of the circumstances.  If testing reveals that T.F. has not closed the educational deficit in all three areas referred to in Table 3 by April 2012 [when T.F. will be sixteen years old], T.F. also may receive job training and other transitional services at defendants' expense.

2. T.F.'s mother, Angelique Moore, shall have the final authority to determine the mix of services to be provided and the service providers to be used.  However, Ms. Moore shall consult with T.F.'s IEP team regarding the services T.F should receive.  If Ms. Moore is incapable of exercising her authority under this order during any period, T.F.'s [27-year old] sister LaShauntya Denise Moore Reynolds shall take her place during such period.

3. Defendants shall arrange for T.F. to be tested in April of each year, beginning in 2007, using the Wechsler Individual Achievement Test (WIAT) for skills in word reading, reading comprehension and math reasoning at defendants' expense.  If, in any year, T.F.'s scores in each of those categories are equal to or greater than the scores shown in Table 3, defendants shall have no further obligation to provide compensatory education services or training.  If there is a dispute between the parties as to whether the testing shows T.F. has achieved scores equal to or greater than those shown in Table 3, either party may file a hearing request with the District of Columbia Public Schools' Student Hearing Office and may obtain a resolution through that hearing process.  In any event, defendants shall have no obligation to provide compensatory education services or training after T.F. turns nineteen years of age.

**Table 3**

| Testing Date | Word Reading | Reading Comprehension | Math Reasoning |
|---|---|---|---|
| [April 2005]¹³ | [1:3] | [2:2] | [1:6] |
| [April 2006] | [1:8] | [2:7] | [2:1] |
| April 2007 | 2:3 | 3:2 | 2:6 |
| April 2008 | 2:8 | 3:7 | 3:1 |
| April 2009 | 3:3 | 4:2 | 3:6 |
| April 2010 | 3:8 | 4:7 | 4:1 |
| April 2011 | 4:3 | 5:2 | 4:6 |
| April 2012 | 4:8 | 5:7 | 5:1 |
| April 2013 | 5:3 | 6:2 | 5:6 |
| April 2014 | 5:8 | 6:7 | 6:1 |

4.    Defendants shall pay for all services, training and/or testing described in this order, capped at a rate of $150 per hour (or any higher rate defendants may adopt in the future for payments for similar services).  Defendants shall provide a letter specifying the procedure to be followed by service providers to obtain payment.  If the procedure requires that any forms be filled out, copies of all such forms shall be provided with the letter.  Payments to service providers shall be made not later than 20 calendar days following defendants' receipt of the service provider's invoice, notwithstanding any other procedure that may apply in other cases.

---

¹³    The bracketed testing levels for April 2005 and April 2006 are provided merely to show the basis for the testing levels in April 2007 and thereafter.